*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

### UNITED STATES
Appellee

**v.**

### Michael L. HAYNES Jr., Private
United States Army, Appellant

**No. 18-0359**

Crim. App. No. 20160817

Argued April 23, 2019—Decided July 2, 2019

Military Judge: Lanny Acosta

For Appellant: *Captain Zachary A. Gray* (argued)*; Colonel Elizabeth G. Marotta, Lieutenant Colonel Tiffany D. Pond,* and *Lieutenant Colonel Todd W. Simpson* (on brief).

For Appellee: *Captain KJ Harris* (argued); *Colonel Steven P. Haight, Lieutenant Colonel Eric K. Stafford,* and *Lieutenant Colonel Wayne H. Williams* (on brief); *Captain Sandra L. Ahinga.*

Chief Judge STUCKY delivered the opinion of the Court, in which Judges RYAN and SPARKS joined. Judge OHLSON and Judge MAGGS each filed a separate opinion concurring in the result.

————————

Chief Judge STUCKY delivered the opinion of the Court.

On appeal before the United States Army Court of Criminal Appeals (CCA), Appellant alleged for the first time that, under *United States v. Pierce*, 27 M.J. 367 (C.M.A. 1989), he was entitled to sentencing credit for the nonjudicial punishment imposed on him under Article 15, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 815 (2012), for the same wrongful drug use he was allegedly punished for at court-martial. Concluding that the issue was affirmatively waived, the CCA denied Appellant's request for *Pierce* credit. We granted review to determine: (1) whether an appellant may raise the issue of *Pierce* credit for the first time on appeal; and (2) if so, whether the CCA's actual review of this issue under its Article 66(c), UCMJ, 10 U.S.C. § 866(c), authority was sufficient. Because Appellant affirmatively waived his

claim for *Pierce* credit, we need not reach these issues, and thus affirm the judgment below.

## I. Posture

A military judge sitting alone as a general court-martial convicted Appellant, pursuant to his pleas, of two specifications of failing to report to his place of duty, three specifications of willful disobedience of a superior commissioned officer, one specification of willful disobedience of a noncommissioned officer, one specification of making a false official statement, two specifications of wrongful use of a controlled substance, one specification of abusive sexual contact, and one specification of assault consummated by a battery, in violation of Articles 86, 90, 91, 107, 112a, 120, and 128, UCMJ, 10 U.S.C. §§ 886, 890, 891, 907, 912a, 920, 928 (2012).

For his offenses, the military judge sentenced Appellant to a bad-conduct discharge and thirteen months of confinement. The military judge ordered that Appellant receive 107 days of pretrial confinement credit against his term of confinement. In accordance with Appellant's pretrial agreement, the convening authority approved only so much of the sentence as provided for a bad-conduct discharge and confinement for six months. In his action, the convening authority complied with the military judge's order and credited Appellant with the 107 days of pretrial confinement credit. In a published opinion, the CCA affirmed the findings and the sentence. *United States v. Haynes*, 77 M.J. 753, 758 (A. Ct. Crim. App. 2018).

## II. Background

Because the underlying facts leading to the charges and convictions in this case are not relevant to the issues before us, we need not engage in a lengthy recitation of Appellant's misdeeds. It suffices to say that Appellant smoked copious amounts of marijuana, leading him to test positive on four separate drug tests that were administered between April 8, 2016 and June 24, 2016. As a result of these positive drug tests, Appellant was charged, in relevant part, with two specifications of wrongfully using marijuana. Specification 2 of Charge III concerned Appellant's wrongful use of

marijuana on divers occasions between on or about May 7, 2016, and June 24, 2016.

On July 14, 2016, Appellant yet again tested positive for marijuana. Rather than prefer an additional charge, Appellant's commanding officer imposed nonjudicial punishment under Article 15, UCMJ. The Article 15, UCMJ, nonjudicial punishment covered two "failure to go" offenses as well as Appellant's wrongful use of marijuana on divers occasions between on or about June 14, 2016, and July 14, 2016. Eleven days of that period, June 14 through June 24, overlapped with the charging period of Specification 2 of Charge III, meaning that, in theory, Appellant's use of marijuana during that time could have been the basis of both the preferred charge and the Article 15, UCMJ, nonjudicial punishment.

Taking issue with this purported double punishment, Appellant sought *Pierce* credit on appeal. Deeming the issue waived, the CCA denied relief. *Haynes*, 77 M.J. at 757.

### III. Discussion

"We consider the issue of waiver as a question of law under a de novo standard of review." *United States v. Rosenthal*, 62 M.J. 261, 262 (C.A.A.F. 2005). This Court has recognized that "[w]aiver can occur either by operation of law, or by the 'intentional relinquishment or abandonment of a known right.'" *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018) (citations omitted). "When … an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal." *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009).

In the instant case, we hold that Appellant affirmatively waived any entitlement to *Pierce* credit.

At trial, counsel engaged in the following exchange with the military judge:

> MJ: And, Counsel, based upon the information on the charge sheet, the accused is to be credited with 107 days of pretrial confinement credit; is that correct?
>
> TC: Yes, Your Honor.
>
> DC: Yes, Your Honor.

By answering in the affirmative when asked if he agreed with the proposed amount of pretrial confinement credit due, Appellant affirmatively acknowledged that he was not entitled to any additional confinement credit.

This is not simply a case where defense counsel failed to lodge an objection. Instead, the military judge directly asked defense counsel if he agreed with the proposed amount of confinement credit and defense counsel expressly indicated that he did. As such, we see defense counsel's agreement as akin to a statement of "no objection," which we have previously recognized may count as an affirmative waiver. *See United States v. Ahern*, 76 M.J. 194, 198 (C.A.A.F. 2017); *United States v. Campos*, 67 M.J. 330, 333 (C.A.A.F. 2009).

In reaching our decision, we realize that the colloquy between the military judge and counsel could be interpreted in a narrower fashion. The military judge did not ask a vague, open-ended question regarding credit generally, but instead couched his question in terms of "pretrial confinement credit."

We acknowledge that, in the military, the term "pretrial confinement credit" typically refers to *Allen*[1] credit, not *Pierce* credit. However, *Pierce* credit has long been considered a form of confinement credit. *See, e.g., United States v. Lee*, 73 M.J. 166, 169 n.4 (C.A.A.F. 2014) (noting that the appellant received 799 days of confinement credit pursuant to *Allen*, and 123 days pursuant to *Pierce*); *United States v. Minyen*, 57 M.J. 804, 804–05 (C.G. Ct. Crim. App. 2002) ("The military judge … determined that Appellant was entitled to … 30 days [of] confinement credit under *United States v. Pierce* for prior non-judicial punishment …."); *United States v. Globke*, 59 M.J. 878 (N-M. Ct. Crim. App. 2004) (describing *Pierce* credit as a form of "confinement credit"). Appellant himself recognizes that *Pierce* credit is a form of confinement credit, and argues that he "remains entitled to at least 73 days of confinement credit against his approved sentence."

Since *Pierce* credit is a type of confinement credit, we think it appropriate to treat the exchange between the mili-

---

[1] *United States v. Allen*, 17 M.J. 126, 127 (C.M.A. 1984).

tary judge and counsel as one concerning confinement credit in the broad sense. It is clear that the military judge sought to understand the amount of credit due to Appellant and explicitly invited Appellant to question his calculation of the credit due. Although offered the opportunity to contradict or add anything, defense counsel declined to do so and instead affirmatively agreed that Appellant was entitled to 107 days of credit.

Having found a valid affirmative waiver, we need not decide whether Appellant also waived the issue of *Pierce* credit by operation of law. As Appellant's waiver "leaves no error for us to correct on appeal," *Campos*, 67 M.J. at 332 (internal quotation marks omitted) (citation omitted), our inquiry is at an end.

## IV. Judgment

The judgment of the United States Army Court of Criminal Appeals is affirmed.

Judge OHLSON, concurring in the result.

Regrettably, the majority has chosen to find that waiver applies in this case—despite the fact that such a step is neither appropriate nor necessary.

A finding of waiver is not appropriate for two reasons. First, the colloquy between Appellant and the military judge that is cited by the majority in support of its waiver determination only refers to pretrial confinement credit and not to confinement credit for nonjudicial punishment. Second, waiver requires a *knowing* relinquishment of rights, and yet Appellant had an objectively reasonable belief *based on this Court's own precedents* that he did not have to raise the *Pierce* credit issue[1] at his court-martial but instead could wait and raise the issue later.

A finding of waiver is not necessary[2] because the majority could have reached the same result—an affirmance of the decision below—without invoking waiver. Specifically, the majority could have simply and correctly noted that even if the law and the facts were to be viewed in the light most favorable to Appellant, he still cannot prevail because the record before us fails to adequately support his request for *Pierce* credit. Therefore, although I concur with the majority's disposition of this case, I cannot agree with their line of reasoning in support of it.

The majority points to the following exchange with the military judge as evidence of waiver of *Pierce* credit:

> MJ: And, Counsel, based upon the information on the charge sheet, the accused is to be credited with 107 days of *pretrial confinement credit*; is that correct?

[1] In *United States v. Pierce*, this Court held that an accused must be given credit for nonjudicial punishment suffered if the accused is convicted of the same act or omission at a court-martial. 27 M.J. 367, 369 (C.M.A. 1989).

[2] As I have previously explained, "[w]aiver is serious business" and "this Court should invoke the waiver doctrine with great caution." *United States v. Hardy*, 77 M.J. 438, 445 (C.A.A.F. 2018) (Ohlson, J., dissenting); *see United States v. Barnes*, 883 F.3d 955, 957 (7th Cir. 2018) ("Because the waiver principle is construed liberally in favor of the defendant, we are cautious about interpreting a defendant's behavior as intentional relinquishment.").

TC: Yes, Your Honor.

DC: Yes, Your Honor.

(Emphasis added.) As can be seen, this exchange only addressed *Allen*[3] credit, which is "day-for-day credit for … pretrial confinement." *United States v. Rock*, 52 M.J. 154, 156 (C.A.A.F. 1999). Neither the defense nor the military judge referenced or addressed other confinement credits, including *Pierce* credit. The fact that they were solely discussing "pretrial confinement credit" is reinforced by the military judge's reference to "the information on the charge sheet," which contained the list of dates (adding up to 107 days) during which the Government imposed "Pretrial Confinement." It also is evident from the military judge's and convening authority's decisions which "credited [Appellant] with *107 days of pretrial confinement credit* against … [Appellant's] term of confinement." (Emphasis added.) Therefore, the exchange cited by the majority simply is a discussion of *Allen* credit—not an intentional relinquishment of *Pierce* credit resulting in waiver.

The majority acknowledges that this exchange could be interpreted in this "narrower fashion." *United States v. Haynes,* __ M.J. __ (4) (C.A.A.F. 2019). However, it then chooses to treat the discussion of confinement credit "in the broad sense" because "*Pierce* credit is a type of confinement credit." *Id.* at __ (4, 5). I agree that *Pierce* credit, like other types of credit recognized by this Court, is a form of confinement credit. *See United States v. Spaustat*, 57 M.J. 256, 263–64 (C.A.A.F. 2002) (referring to credits for violations of Article 13, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 813, and Rule for Courts-Martial 305, along with *Allen* credit as "confinement credits"). Nevertheless, this broad interpretation is not supported in the instant case because, as previously noted, the exchange between the military judge and trial defense counsel referred to "*pretrial* confinement credit" specifically and not to "confinement credit" generally. (Emphasis added.) Under these circumstances, it cannot be said that Appellant engaged in a knowing and intentional relinquishment of his right to *Pierce* credit.

---

[3] *United States v. Allen*, 17 M.J. 126, 127 (C.M.A. 1984).

Additionally, this broad reading conflicts with this Court's precedents holding that an accused is "the gatekeeper" in regard to deciding when to raise the issue of *Pierce* credit. *United States v. Gammons*, 51 M.J. 169, 182 (C.A.A.F. 1999); *see also United States v. Mead*, 72 M.J. 479, 482 (C.A.A.F. 2013). Here, Appellant *could have* raised the issue with the military judge at trial, but our case law *also* permitted him to raise *Pierce* credit *at a later time. See Gammons*, 51 M.J. at 184. We have stated: "Presumably, the best place to repose the responsibility to ensure that credit is given *is the convening authority*." *Pierce*, 27 M.J. at 369 (emphasis added). And importantly, in *United States v. Edwards* we stated: "By placing the ultimate responsibility on the convening authority to ensure that credit is given, all that the Court did was to provide that, in cases in which an *accused elects not to raise the matter at trial*, credit will be forthcoming from the convening authority." 42 M.J. 381, 383 (C.A.A.F. 1995) (emphasis added) (internal quotation marks omitted). Therefore, it is clear from this Court's prior case law that Appellant's failure to make a *Pierce* credit request with the military judge did not affirmatively waive the *Pierce* credit issue because Appellant still had the opportunity to seek credit from the convening authority.

Although I conclude that Appellant did not waive this issue, I also conclude that he has failed to demonstrate that he is entitled to *Pierce* credit. Specifically, Appellant did not develop a sufficient factual record to show that the Article 15, UCMJ, 10 U.S.C. § 815 (2012), punishment he received covered the same misconduct as the marijuana use offense of which he was convicted at court-martial. Unless the facts supporting a claim for *Pierce* credit are particularly clearcut, the best time for a servicemember to develop a record that demonstrates his or her entitlement to such credit is at the court-martial or when submitting matters to the convening authority—not on appeal. *United States v. Bracey*, 56 M.J. 387, 389 (C.A.A.F. 2002); *Pierce*, 27 M.J. at 369. Appellant did not do so here. Therefore, I vote to affirm the judgment of the United States Army Court of Criminal Appeals solely on this basis.

Judge MAGGS, concurring in the result.

In *United States v. Pierce*, 27 M.J. 367, 369 (C.M.A. 1989), the Court held that when a court-martial finds an accused guilty of an offense for which nonjudicial punishment has already been imposed under Article 15, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 815 (2012), the accused has a right to "*complete* credit for any and all nonjudicial punishment suffered."[1] In this case, the court-martial found Appellant guilty of Charge III, Specification 2, which alleged that he wrongfully used marijuana "between on or about 7 May 2016 and on or about 24 June 2016." Appellant contends that he is entitled to *Pierce* credit against the adjudged sentence because his commander imposed nonjudicial punishment under Article 15, UCMJ, for, among other offenses, the wrongful use of marijuana "between on or about 14 June 2016 and on or about 14 July 2016." Given the overlap in the specified dates of wrongful marijuana use, Appellant's theory is that he was subjected to both judicial and nonjudicial punishment for using marijuana between June 14, and June 24, 2016.

The United States Army Court of Criminal Appeals (ACCA) rejected Appellant's contention on several grounds. *United States v. Haynes*, 77 M.J. 753, 755−58 (A. Ct. Crim. App. 2018). The ground that the ACCA identified as most important—and the principal ground that the Government urges in defending the ACCA's decision in this appeal—is that "the stipulation of fact indicates the Article 15 and the charged offense addressed separate misconduct." *Id.* at 757.

---

[1] Imposition of nonjudicial punishment differs from execution of nonjudicial punishment. A commander "imposes" nonjudicial punishment on a servicemember by deciding the punishment for the servicemember's offense and informing the servicemember. *See Manual for Courts-Martial, United States* pt. V, para. 4.c.(4)(B) (2012 ed.) (*MCM*). Nonjudicial punishment is "execut[ed]" when it is carried into effect. *Id.* pt. V, para. 5.g. Execution of nonjudicial punishment may be suspended, mitigated, remitted, or set aside before it is executed. *Id.* pt. V, para. 6. When the Court in *Pierce* refers to the nonjudicial punishment the accused has "suffered," it apparently means the nonjudicial punishment that has been imposed *and* executed.

I agree with this conclusion and therefore would affirm the judgment of the ACCA on this ground.

I write separately for three reasons. The first is to provide my analysis of the stipulation of fact. The second is to explain my reasons for not joining the Court's opinion or Judge Ohlson's separate opinion concurring in the result. The third is to address the first assigned issue in this case, which is the basic question of "whether an appellant is authorized to request *Pierce* credit for the first time at a court of criminal appeals."

## I. Analysis of the Stipulation of Fact

Rule for Court-Martial (R.C.M.) 811(a) provides that the parties "may make an oral or written stipulation to any fact." In this case, Appellant and counsel for both sides signed a six-page stipulation. A careful analysis of the stipulation reveals that the parties agreed that the nonjudicial punishment was for misconduct that occurred after the misconduct alleged in the preferred charges. Thus despite the overlap in dates alleged in Charge III, Specification 2, and in the Article 15, UCMJ, paperwork, Appellant did not suffer judicial and nonjudicial punishment for the same offense and is therefore not entitled to *Pierce* credit.

Paragraphs 7 through 11 of the stipulation address Appellant's "WRONGFUL USE OF DRUGS." The evident purpose of these paragraphs is to stipulate facts relevant to the charged drug offenses. Paragraph 8 states that Appellant admitted to smoking marijuana on April 2 and May 15, 2016. Paragraphs 9, 10, and 11 further state that samples of Appellant's urine collected on May 31, June 7, and June 24, 2016, each tested positive for THC (marijuana). These stipulated facts support Appellant's plea of guilty to Charge III, Specification 2, which alleged wrongful use of marijuana between May 7, and June 24, 2016.

Paragraphs 19 through 25 of the stipulation appear under the heading "MISCONDUCT SUBSEQUENT TO PREFERRAL." Paragraph 19 states that Appellant provided a urine sample on July 14, 2016, that later tested positive for marijuana use. Paragraph 22 states Appellant's commander imposed nonjudicial punishment on August 11,

2016, "for . . . his positive urinalysis sample from 14 July 2016." Admittedly, paragraphs 19 and 22 do not *expressly* indicate when Appellant wrongfully used the marijuana which caused his July 14, 2016, urine sample to be positive. They also do not *expressly* say that the nonjudicial punishment imposed on August 11, 2016, was only for marijuana use after June 24, 2016, the last date of the marijuana use alleged in the charge sheet. In my view, however, the only reasonable interpretation of these paragraphs is that the parties were stipulating that the wrongful use of marijuana covered by the Article 15, UCMJ, nonjudicial punishment occurred after June 24, 2016. I reach this conclusion for four reasons, each of which the Government advanced in its brief or at oral argument.

First, the placement and content of paragraphs 7−11 and 19−25 in the stipulation evince a purpose of first stating facts concerning the misconduct alleged in the charged offenses and then describing additional misconduct that occurred after the charged offenses. To the extent that the headings in the stipulation are relevant to determining the intent and understanding of the parties, the heading "MISCONDUCT SUBSEQUENT TO PREFERRAL"— although not precisely worded—confirms the view that the misconduct described in paragraphs 19−25 occurred after the misconduct alleged in the preferred charges.[2]

Second, the Government could not have understood or intended Charge III, Specification 2, to cover the additional misconduct revealed by the urine sample taken on July 14, 2016, because the Government did not have the urinalysis results until after it had already preferred the charges. As

---

[2] While the urinalysis results of the July 14, 2016, urine sample were not available until August 3, 2016, after the August 1, 2016, preferral of charges in this case, the misconduct described in paragraphs 19−25 took place before that date. However, the most reasonable inference is still that the parties intended paragraphs 19−25 to describe misconduct that occurred after the misconduct alleged in the preferred charges because the misconduct was not known to authorities until after preferral.

noted, the charges were preferred on August 1, 2016, and the urinalysis results came back on August 3, 2016.

Third, I find it incredible that Appellant, who was represented by counsel at the time, would have understood that the Article 15, UCMJ, nonjudicial punishment was for the same misconduct alleged in Charge III, Specification 2. If Appellant had thought that the nonjudicial punishment was for the same misconduct, then he would have had no reason to accept nonjudicial punishment. He could have turned down the nonjudicial punishment with no additional risk given that he was already facing trial by court-martial.

Fourth, a reasonable inference from the stipulated facts is that Appellant wrongfully used marijuana after June 24, 2016, the last date alleged in Charge III, and before July 14, 2016, the last day for which the Article 15, UCMJ, punishment was imposed. The stipulation of fact states that the THC level in Appellant's urine sample taken on June 24, 2016, was 33 nanograms and the THC level in the sample subsequently taken on July 14, 2016, was 306 nanograms. This increase in THC levels reasonably indicates additional marijuana use after July 24, 2016.

Based on this analysis of the stipulation of fact, I conclude that the court-martial did not find Appellant guilty of or sentence him to punishment for an offense for which nonjudicial punishment had already been imposed. Appellant is therefore not entitled to *Pierce* credit.

## II. The Court's Opinion and Judge Ohlson's Concurrence in the Result

Instead of reaching the merits, the Court holds that Appellant waived any claim to *Pierce* credit by agreeing that he was entitled to 107 days of "pretrial confinement credit." *United States v. Haynes*, __ M.J. __ (3–5) (C.A.A.F. 2019). I respectfully disagree with this conclusion. For the reasons given by Judge Ohlson, I am not convinced that Appellant's statement regarding "pretrial confinement credit" necessarily covers *Pierce* credit. *Id.* at __ (1) (Ohlson, J, concurring in the result).

Judge Ohlson concludes that, "Appellant did not develop a sufficient factual record to show that the Article 15,

UCMJ, 10 U.S.C. § 815 (2012), punishment he received covered the same misconduct as the marijuana use offense of which he was convicted at court-martial," and that the best place to develop such a record would be at the court-martial or before the convening authority. *Id.* at __ (3) (Ohlson, J, concurring in the result). Because I find above that the factual record developed in this case actually shows that nonjudicial punishment was not imposed on Appellant for the same conduct, I resolve the issue differently.

### III. When Claims for *Pierce* Credit Must be Raised

The first assigned issue in this case was "whether an appellant is authorized to request *Pierce* credit for the first time at a court of criminal appeals." In *United States v. Gammons*, 51 M.J. 169, 184 (C.A.A.F. 1999), this Court provided "guidance" on this issue by stating "if the issue is raised before the Court of Criminal Appeals, that court will identify any such credit." In this case, neither the Court nor Judge Ohlson expressly provides an answer to this assigned issue. Their opinions, however, implicitly call the validity of the *Gammons* guidance into question.

The Court today holds that Appellant waived any claim to *Pierce* credit by not mentioning it when a military judge asked how many days of pretrial confinement credit Appellant should have. *Haynes*, __ M.J. at __ (3–5). This reasoning generally will prevent an accused from raising *Pierce* credit for the first time on appeal because military judges in nearly every case ask the parties how many "days of pretrial confinement credit" the accused is entitled to receive. *See* Dep't of the Army, Pam. 27-9, Legal Services, Military Judges' Benchbook ch. 2, § IV, para. 2-3-4; ch. 2, § V, para. 2-5-15; app. D, para. D-1-6; app. D. para. D-3-5 at 1252 (Sept. 10, 2014) (providing model trial scripts for guilty pleas and contested trials before members and before the military judge alone). An accused who does not ask for *Pierce* credit when answering the question now waives the opportunity to request *Pierce* credit on appeal.

Judge Ohlson does not conclude that Appellant waived a claim to *Pierce* credit but instead concludes only that he failed to build a case at trial or before the convening authority that he was punished twice for the same misconduct.

*Haynes*, __ M.J. at __ (3) (Ohlson, J., concurring in the result). Although I reach a different conclusion about what the record shows in this case, in most instances failing to build a case at trial will prevent an accused from receiving *Pierce* credit if the accused requests the credit for the first time on appeal. Accordingly, the clear implication of the opinions in this case is that trial defense counsel should raise *Pierce* credit before appeal or risk losing it.